Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Thomas J. Hanlon
Michael D. Murphy
Assistant United States Attorneys
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 22, 2024

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> URIEL BALENTIN BADILLO, <br><br> Defendant. | Case No.: 1:23-CR-2037-SAB-1 <br><br> Plea Agreement |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Michael D. Murphy and Thomas J. Hanlon, Assistant United States Attorneys for the Eastern District of Washington, and Defendant URIEL BALENTIN BADILLO ("Defendant"), both individually and by and through Defendant's counsel, Nicholas Marchi, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 3 of the Superseding Indictment filed on June 11, 2024, which charges Defendant with Kidnapping Resulting in Death, in violation of 18 U.S.C. § 1201(a).

Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 1

a.      a term of imprisonment of no less than life imprisonment;

b.      a term of supervised release of not less than 5 years;

c.      a fine of up to $250,000;

d.      restitution; and

e.      a $100 special penalty assessment.

2.      Supervised Release

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

a.      5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.      3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.      2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.      The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.      sentencing is a matter solely within the discretion of the Court;

PLEA AGREEMENT - 2

b.      the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.      the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.      the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.      the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.      the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4.      <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

a.      pleading guilty in this case may have immigration consequences;

b.      a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.      removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.      no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

PLEA AGREEMENT - 3

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

      a.    the right to a jury trial;

      b.    the right to see, hear and question the witnesses;

      c.    the right to remain silent at trial;

      d.    the right to testify at trial; and

      e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    Elements of the Offense

The United States and Defendant agree that in order to convict Defendant of Count 3, Kidnapping Resulting in Death, in violation of 18 U.S.C. § 1201(a), the United States would have to prove the following beyond a reasonable doubt.

      a. *First*, the defendant confined I.M.;

      b. *Second,* the defendant detained I.M. against her will; and

      c. *Third*, the defendant used any instrumentality of interstate commerce in furtherance of committing the offense.

PLEA AGREEMENT - 4

*9th Cir. Jury Instr. 17.1 (Rev. Mar 2022)(modified)*

7.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

On or about October 6, 2018, the Defendant was at Legends Casino located in Toppenish, Washington.  While at Legends Casino, the Defendant received a phone call on his cellular phone.  The caller requested that the Defendant travel to 4670 Branch Road, located in Wapato, Washington, (hereinafter "the Estrada Ranch") and within the external boundaries of the Yakama Nation, in Indian Country in the Eastern District of Washington.  The caller advised the Defendant that someone was shooting at Andrew Zack (hereinafter "Zack.")  The Defendant maintained possession of his cellular phone throughout all of the events listed below.

The Defendant immediately departed from Legends Casino and traveled to the Estrada Ranch.  The Defendant was traveling in his Dodge Durango with Vehicle Identification Number 1D8HB48P77F554179 (hereinafter "Dodge Durango.")[1]  The Defendant arrived at the Estrada Ranch and observed I.M.  The Defendant observed I.M. throw a gun to the ground.  The Defendant asked I.M. about Zack.  I.M. did not respond.  The Defendant knew that Zack frequently visited the residence at 1161 Donald Road, Wapato, Washington, located within the external boundaries of the Yakama Nation, in Indian Country, which is also

---

[1] The Dodge Durango was manufactured outside of the State of Washington.

PLEA AGREEMENT - 5

known as the "House of Souls." The Defendant decided to travel to the House of Souls to locate Zack.

The Defendant and I.M. entered the Dodge Durango and traveled to the House of Souls. Upon arrival, the Defendant observed multiple people. The Defendant exited the vehicle and asked if anyone had seen Zack. The Defendant advised that he didn't know what happened to Zack. The Defendant advised that I.M. was inside of the Dodge Durango. A female approached and said "gag the bitch up." A sock was forced into I.M.'s mouth. I.M. was tied up with yellow colored rope.

The Defendant received a call on his cellular phone. The Defendant was instructed to transport I.M. back to the Estrada ranch.

The Defendant entered the backseat of the Dodge Durango with I.M. The unknown female got behind the wheel of the Dodge Durango. The female drove the vehicle back to the Estrada Ranch. I.M. was gagged the entire trip and was not free to leave.

The group arrived back at the Estrada Ranch. The Defendant observed Zack and others outside of a shop located at the Estrada Ranch. The Defendant learned that I.M. had shot Zack and Zack had been hiding in the shop. The Defendant observed that Zack suffered minor injuries from the shooting.

At some point, I.M. was removed from the Dodge Durango and tied up with cargo straps. I.M. was forced into the trunk of a Chevrolet vehicle.[2] I.M. was physically restrained, her mouth was gagged with duct tape, and she was unable to communicate. Multiple people discussed what to do with I.M. Ultimately, the trunk was closed. The Defendant took out a .45 caliber pistol. The Defendant fired into the trunk of the vehicle.[3]

---

[2] The Chevrolet vehicle was manufactured outside of the State of Washington.
[3] The Defendant maintains that he did not intend to shoot I.M. when he fired into the trunk of the vehicle.

PLEA AGREEMENT - 6

A male juvenile and a female juvenile were present at the time of the shooting. Someone instructed the male juvenile to dump I.M.'s body. The male juvenile and the female juvenile entered the Chevrolet vehicle and transported I.M.'s body to a location within the external boundaries of the Yakama Nation. The male juvenile removed I.M.'s body and dumped it. The male juvenile then shot I.M.'s body with a .380 caliber pistol. The male juvenile and the female juvenile departed from the dump site and traveled back to the Estrada Ranch. The male juvenile went to sleep.

The following day, the male juvenile had a conversation with Joshawa Estrada (hereinafter "Estrada.") The male juvenile told Estrada what had happened and where he dumped I.M.'s body. According to the male juvenile, Estrada replied, "fucking retard, you're just asking someone to find it." According to Estrada, the Defendant ordered him and the juvenile male to retrieve the cargo straps from I.M.'s body.

The male juvenile and Estrada traveled to the dump site and loaded I.M.'s body into the back of a truck. I.M.'s body was then transported to another location within the boundaries of the Yakama Nation Reservation and dumped. Estrada and the male juvenile removed the cargo straps from her body. The male juvenile then shot I.M.'s body with a .22 caliber pistol. The purpose of moving I.M.'s body was so that her remains would not be found by law enforcement.

On November 28, 2018, I.M.'s remains were discovered. Law enforcement responded and observed several .22 caliber casings around her remains. On December 3, 2028, Forensic Pathologist Jeffrey Reynolds (hereinafter "Dr. Reynolds") performed an autopsy. Dr. Reynolds determined that I.M. had been shot in the head with .45 caliber rounds, .22 caliber rounds, and once with a caliber between .45 and .22. Dr. Reynolds also determined that I.M. had been shot in the chest with multiple .45 caliber rounds and .22 caliber rounds. Dr. Reynolds concluded the cause of death was multiple gunshot wounds to the head.

PLEA AGREEMENT - 7

8.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss: (1) Count 3 of the Indictment (1:23-CR-02037-SAB-1) filed on June 13, 2023; and (2) the Indictment (1:21-CR-2034-TOR) filed on August 10, 2021.

9.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    Base Offense Level

The United States and the Defendant believe that the base offense is 43. U.S.S.G. §§ 2A1.1 & 2A4.1(c).

b.    Special Offense Characteristics

The United States and the Defendant do not have any agreement as to any specific offense characteristics.

c.    Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

PLEA AGREEMENT - 8

v.        does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

d.    No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

e.    Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

10.    Incarceration

The United States and the Defendant reserve the right to recommend any legal sentence.

11.    Supervised Release

The United States and Defendant each agree to recommend 5 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty

PLEA AGREEMENT - 9

plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

a.   The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b.   Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

c.   Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider.  Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider.  Defendant shall contribute to the cost of treatment according to the Defendant's ability.

12.   Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine.  Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13.   Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

PLEA AGREEMENT - 10

14. Restitution

The United States and Defendant agree that restitution is appropriate and mandatory, without regard to Defendant's economic situation, to identifiable victims who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663A, 3664.

Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay restitution for all losses caused by Defendant's individual conduct, in exchange for the United States not bringing additional potential charges, regardless of whether counts associated with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the United States and Defendant agree to the following:

a. Restitution Amount and Interest

The United States and Defendant stipulate and agree that, pursuant to 18 U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution.

b. Payments

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

c. Treasury Offset Program and Collection

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution

PLEA AGREEMENT - 11

obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets.  18 U.S.C. §§ 3572, 3613, and 3664(m).

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

d.    Notifications and Waivers

Defendant agrees to notify the Court and the United States of any material change in Defendant's economic circumstances (e.g., inheritances, monetary gifts, changed employment, or income increases) that might affect Defendant's ability to pay restitution.  18 U.S.C. § 3664(k).  Defendant also agrees to notify the United States of any address change within 30 days of that change.  18 U.S.C. § 3612(b)(1)(F).  These obligations cease when Defendant's fine and restitution obligations are paid in full.

Defendant acknowledges that the Court's decision regarding restitution is final and non-appealable; that is, even if Defendant is unhappy with the amount of restitution ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or restitution order.

15.    Payments While Incarcerated

PLEA AGREEMENT - 12

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine, or term of supervised release.

Defendant expressly waives Defendant's right to appeal the restitution order imposed by the Court so long as restitution does not exceed $50,000.00.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>

PLEA AGREEMENT - 13

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

    c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19.   <u>Admissibility of Facts and Prior Statements</u>

By signing this Plea Agreement, Defendant admits the truth of the facts set forth in the Factual Basis section of this Plea Agreement and agrees that these facts, along with any written or oral statements Defendant makes in court, shall be deemed usable and admissible against Defendant in any subsequent legal

PLEA AGREEMENT - 14

proceedings, including criminal trials and/or sentencing hearings, under Federal Rule of Evidence 801(d)(2)(A).

Defendant acknowledges, admits, and agrees that by signing this Plea Agreement, Defendant is expressly modifying and waiving Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to any facts Defendant admits and/or any statements Defendant makes in court.

20.    Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____    7/22/2024
Michael D. Murphy                  Date
Assistant United States Attorney

_____    7/22/2024
Thomas J. Hanlon                   Date
Assistant United States Attorney

PLEA AGREEMENT - 15

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____          Date 6/24/24
Uriel Balentin Badillo
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          Date 6/24/24
Nicholas Marchi
Attorney for Defendant

PLEA AGREEMENT - 16